## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT JAHODA,

            Plaintiff,

     v.

THE PEP BOYS – MANNY, MOE & JACK,

            Defendant.

Case No.

Filed Electronically

**COMPLAINT FOR PERMANENT INJUNCTION REQUIRING CHANGES
TO CORPORATE POLICY AND THE ELIMINATION OF DIGITAL ACCESS
BARRIERS PURSUANT TO 42 U.S.C. § 12188(a)(2) AND FOR DECLARATORY
RELIEF PURSUANT TO 8 U.S.C. § 2201, *et seq.* AND 42 Pa.C.S. §§ 7531, *et seq.***

Robert Jahoda, ("Plaintiff") seeks a permanent injunction requiring a change in The Pep

Boys – Manny, Moe & Jack ("Defendant" or the "Company") corporate policies, procedures and

practices to cause Defendant's website to become, and remain, accessible; and declaratory and

equitable relief requiring Company to purge personal information acquired from Plaintiff and

Company's tracking devices deposited on his computer without his authorization; and in support

thereof asserts as follows:

## INTRODUCTION

1.     Plaintiff Robert Jahoda brings this action against Defendant and asserts that its

website is not accessible to blind and visually impaired consumers, violating Title III of the

Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"). Plaintiff seeks a

permanent injunction to cause a change in Defendant's corporate policies related to its web-

based technologies so that Defendant's website will become, and will remain, accessible.  The website at issue is www.pepboys.com (the "Website").

2.      Further, Plaintiff seeks declaratory and equitable relief requiring Company to purge personal information acquired from Plaintiff through Company's unauthorized use of his computer and personal information, arising out of his attempts to navigate Company's Website.

3.      While the increasing pervasiveness of digital technologies present an unprecedented opportunities to increase access to information, goods and services for people with perceptual or motor disabilities, online businesses often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities.  This is notwithstanding the fact that accessible technology is both readily available and cost effective.

4.      Blind and visually impaired consumers must use screen reading software or other assistive technologies in order to access website content and functions.  Defendant's Website contains digital barriers which limit the ability of blind and visually impaired consumers to access the sites.

5.      Since August 27, 2011, Plaintiff has patronized Defendant's Website in the past, and intends to continue to patronize Defendant's Website.  However, unless Defendant is required to eliminate the access barriers at issue, and required to change its policies so that access barriers do not reoccur on Defendant's Website, Plaintiff will continue to be denied full access to the Website as described, and will be deterred from fully using Defendant's Website.

6.      The ADA expressly contemplates the type of injunctive relief that Plaintiff seeks in this action.  In relevant part, the ADA requires:

> [i]n the case of violations of . . . this title, injunctive relief shall include an order
> to alter facilities to make such facilities readily accessible to and usable by

2

individuals with disabilities….Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy. . .

42 U.S.C. § 12188(a)(2).

7.      Because Defendant's Website has never been accessible and because Defendant does not have, and has never had, a corporate policies, procedures and practices that are reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

a)  that Defendant retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its Website so that it complies with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA");

b)  that Defendant work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

c)  that Defendant work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;

d)  that Defendant work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;  and,

e)  that Defendant work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and toll free phone number to report accessibility-related problems.[1]

---

[1] Web-based technologies often employ features and display content that are modified daily, hourly, or even dynamically, based on characteristics of an individual user or user device. Because of these ongoing changes, a one-time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies, procedures and practices related to its implementation of web-based technologies.  To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies, procedures and practices related to web-based technologies have been changed in a meaningful manner that will cause the website to

## JURISDICTION AND VENUE

8.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. § 12188.

9.     Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

10.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

11.     Plaintiff, Robert Jahoda, is and, at all times relevant hereto, has been a resident of the Commonwealth of Pennsylvania, residing within this judicial district.  Plaintiff is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

12.     Defendant, Pep Boys – Manny, Moe & Jack, is a Pennsylvania corporation with a principal place of business at 3111 West Allegheny Avenue, Philadelphia, PA.  Defendant owns, operates and maintains retail brick and mortar stores across the United States, including within the Commonwealth of Pennsylvania.  Defendant's retail stores offer goods and services to the public.  Defendant also offers goods and services to the public through the Website. Defendant's brick and mortar stores and website are integrated and are public accommodations pursuant to 42 U.S.C. § 12181(7).

---

remain accessible, the website must be reviewed on periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

**FACTUAL BACKGROUND**

**Inaccessibility of Company's Website**

13.     The Internet has become a significant source of information and a means for conducting everyday activities such as shopping, banking, etc. for both sighted and blind and visually-impaired persons, as well as individuals with other perceptual or motor disabilities.

14.     Blind individuals may access websites by using keyboards in conjunction with screen reader software that converts text to audio.  Screen reader software provides the primary method by which a blind person may independently use the Internet.  Unless websites are designed to be read by screen reader software, blind individuals are unable to fully access websites and the information, products and services available through the sites.

15.     The international website standards organization, W3C, has published WCAG 2.0 AA.  WCAG 2.0 AA provides widely accepted guidelines for making websites accessible to individuals with disabilities.  These guidelines have been endorsed by the United States Department of Justice and numerous federal courts.

16.     Through its Website, Defendant offers products for online sale, home delivery and purchase at Defendant's retail stores.  Defendant's Website also helps users locate stores, view and purchase products, read product descriptions and prices, create and read product reviews, sign up for email lists and perform a variety of other functions.

17.     Plaintiff is permanently blind and uses screen reader software in order to access the Internet and read website content.

18.     Despite several attempts to use and navigate www.pepboys.com, Plaintiff has been denied the full use and enjoyment of the facilities, goods and services available on www.pepboys.com as a result of access barriers on the site.

19.     The barriers at www.pepboys.com have caused a denial of Plaintiff's full and

equal access multiple times in the past, and now deter Plaintiff from attempting to use

Defendant's website.

20.     The access barriers at www.pepboys.com, include but are not limited to, the

following:

    a) Text equivalent for every non-text element is not provided;

    b) Documents are not organized so they are readable without requiring an associated style sheet;

    c) Frames are not titled with text that facilitates frame identification and navigation;

    d) When pages utilize scripting languages to display content, the information provided by the script is not identified with functional text that can be read by assistive technology;

    e) Electronic forms do not allow people using assistive technology to access the information, field elements, and functionality required for completion and submission of the form, including all directions and cues;

    f) When a timed response is required, the user is not alerted and given sufficient time to indicate more time is required;

    g) All pages are not readable and functional when the text size is doubled;

    h) Web pages do not have titles that describe topic or purpose;

    i) The default human language of each web page cannot be programmatically determined;

    j) No link is provided to skip navigation and other page elements that are repeated across web pages;

    k) The purpose of each link cannot be determined from the link text alone, or from the link text and its context;

    l) In content implemented using markup languages, elements do not have complete start and end tags, are not nested according to their specifications, and/or contain duplicate attributes; and,

m) For all user interface components, the name and role cannot be programmatically determined; states, properties and values that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technologies.

21. Were the Website accessible, Plaintiff could independently shop for and research products via Defendant's website.

22. Though Defendant has centralized policies regarding the maintenance and operation of its Website, Defendant has never had a plan, policy or practices that are reasonably calculated to make its Website fully accessible to, and independently usable by, blind people.

23. Without injunctive relief, Plaintiff and other blind individuals will continue to be unable to independently use the Website in violation of their rights.

**Company's Unauthorized Use of Plaintiff's Computer and Personal Information**

24. The allegations of this section apply to Defendant's conduct over the past four years.

25. When any individual navigates to a web page on a Website of Defendant, before the web page has even finished being downloaded to and displayed on the individual's computer, Defendant stores and accesses data in cookies, local storage, and cache storage on the individual's computer; and Defendant causes third parties to store and access data in cookies, local storage, and cache storage on the individual's computer.

26. The purpose of many, if not the majority of the items stored and accessed by Defendant and third parties on an individual visitor's computer is to track and profile the individual's browsing activities across the web, over time, and to enable Defendant and third parties to share such tracking information pursuant to their commercial agreements with each other and their agents and representatives.

27. In addition, Defendant and the third parties whose tracking it facilitates enhance their tracking information by obtaining further information about the individual from other parties, including information about the individual's offline purchases and consumer demographic characteristics.

28. Plaintiff did not authorize Defendant to use his computer to track and profile him on its Website or other websites, and did not authorized Defendant to cause third parties to do so.

29. Defendant purports to engage in these data storage, collection, and sharing practices pursuant to the individual's agreement to Defendant's Website Terms and Conditions and Privacy Policy posted on its Website.

30. Defendant's Website states that an individual's use of the Website constitutes the individual's agreement to Defendant's Terms and Conditions, which incorporates Defendant's Privacy Policy.

31. However, as alleged above, Defendant engages in these data storage, collection, and sharing practices before any individual, regardless of ability, can access and read Defendant's Website Terms and Conditions and Privacy Policy.

32. Defendant does not require individuals who visit its Website to scroll through its Terms and Conditions and Privacy Policy or to engage in any action or communication indicating their assent to them.

33. In Plaintiff's case, because of barriers to access on Defendant's Website, Plaintiff had no reasonable notice of or ability to access Defendant's Terms and Conditions and Privacy Policy.

**SUBSTANTIVE VIOLATIONS**

**FIRST CLAIM FOR RELIEF**
**(Title III of the ADA, 42 U.S.C. § 12181 *et seq.*)**

34.     The allegations contained in the previous paragraphs are incorporated by reference.

35.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

36.     Defendant's retail stores and integrated website are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

37.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

38.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations, which is equal to the opportunities afforded to other individuals. 42 U.S.C. §12182(b)(1)(A)(ii).

39.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can

9

demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii); *see also* 28 C.F.R. § 36.303(a).

40.     Title III requires that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). The regulation sets forth numerous examples of "auxiliary aids and services," including "…accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 36.303(b).

41.     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is blind and has a disability that substantially limited the major life activity of seeing within the meaning of 42 U.S.C. §§ 12102(1)(A) and (2)(A), has been denied full and equal access to the Website. He has not been provided services that are provided to other patrons who are not disabled, and/or has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

42.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## SECOND CLAIM FOR RELIEF
## (Declaratory Relief, 28 U.S.C. § 2201, *et seq.* and 42 Pa.C.S. §§ 7531, *et seq.*)

43.     The allegations contained in the previous paragraphs are incorporated by reference.

44.     Formation of a written contract under Pennsylvania law requires that the parties reach a mutual understanding, exchange consideration, and delineate the terms of their bargain with sufficient clarity.

45.     Regarding any purported terms under which Defendant used and caused third parties to use his computer to store and read tracking information, Plaintiff did not have notice of such terms and did not enter into any agreement Defendant because, as alleged above in paragraphs 24 through 33, Plaintiff did not and could not have assented to such terms, because the use of his computer and tracking took place before Defendant's web page even finished loading on his computer; and Plaintiff did not and could have subsequently assented to any such terms because of Defendant's barriers to access.

46.     Defendant's use of Plaintiff's computer to track and profile him and Defendant's causing third parties to do so was without authorization.

47.     As a result of Defendant's unauthorized conduct, Plaintiff has been harmed in the use and alteration of his property for purposes he did not authorized, and in Defendant's and third parties' ongoing and unauthorized collection and subsequent enhancement of personal information about him.

48.     Accordingly, Plaintiff is entitled to the declaratory and injunctive relief requested below.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

a.  A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its Website is fully accessible to, and independently usable by, blind individuals;

b.  A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to bring its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Website is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiff is described more fully above;

c.  A Declaratory Judgment pursuant to 28 U.S.C. § 2201, *et seq.* and 42 Pa.C.S. §§ 7531, *et seq.* that Defendant's Terms and Conditions and Privacy Policy are unenforceable as to Plaintiff;

d.  Equitable relief consisting of Defendant's purging of any information from and about Plaintiff that personally identifies Plaintiff or that has been or can be use to identify, recognize, locate, or communicate with him or any device associated with him physically, on the Internet or via mobile communication; and information about family members or other persons associated with Plaintiff that was acquired in whole or in part through the use of information from or about Plaintiff; and any information derived therefrom, including in aggregate form; and including such information acquired from Plaintiff's offline transactions with Defendant or other parties;

e.  Payment of costs of suit;

f.  Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

g.  The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated:  August 27, 2015

Respectfully Submitted,

*/s/ Benjamin J. Sweet*

R. Bruce Carlson
Benjamin J. Sweet
Stephanie K. Goldin
CARLSON LYNCH SWEET &
KILPELA, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone:  (412) 322-9243
Fax:  (412) 231-0246
www.carlsonlynch.com

Of Counsel:

Scott A. Kamber (Not Admitted)
David A. Stampley (Not Admitted)
KAMBERLAW, LLC
100 Wall Street, 23rd floor
New York, NY 10005
Phone:  (212) 920-3072
Fax:  (212) 202-6364